FILED
August 22, 2022
Carla Bender
4th District Appellate
Court, IL

2022 IL App (4th) 210672-U

NO. 4-21-0672

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| JOSEPH T. HORTON, | ) | No. 04CF186 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jason Matthew Bohm, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court granted the Office of the State Appellate Defender's motion to withdraw as counsel and affirmed the trial court's judgment as no issue of arguable merit could be raised on appeal.

¶ 2    Defendant, Joseph T. Horton, appeals from the Champaign County circuit court's order denying his motion requesting "genetic marker and/or DNA database search on evidence." The Office of the State Appellate Defender (OSAD), who was appointed to represent defendant in this appeal, has filed a motion to withdraw as counsel, asserting there are no meritorious issues to present on appeal. Defendant *pro se* filed a response opposing the motion. The State argues the trial court properly denied defendant's motion for a DNA database search. We granted defendant leave to file a reply to the State's brief on or before July 25, 2022. Defendant has not done so. We grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4        This court set forth the underlying facts of this case in defendant's prior appeals. See *People v. Horton*, 2020 IL App (4th) 170643-U; *People v. Horton*, 2012 IL App (4th) 110086-U; *People v. Horton*, 396 Ill. App. 3d 1141 (2010) (table) (unpublished order under Supreme Court Rule 23); *People v. Horton*, 371 Ill. App. 3d 1224 (2007) (table) (unpublished order under Supreme Court Rule 23). We will set forth only those facts necessary to resolve the issue presented in this case.

¶ 5        In August 2004, a jury convicted defendant of first degree murder (720 ILCS 5/9-1(a) (West 2002)) and the trial court sentenced him to natural life in prison.

¶ 6                                A. Jury Trial

¶ 7        Dr. Brian Mitchell, a forensic pathologist, testified he conducted the autopsy of Amy Smith. In addition to 38 clusters of injuries due to blunt force trauma and 15 stabbing injuries, Smith had internal injuries including a collapsed lung and significant trauma to the brain. Dr. Mitchell stated a pattern abrasion on Smith's scalp was consistent with the treads of defendant's boots.

¶ 8        Dr. Mitchell testified he observed multiple injuries during his examination of Smith, including abrasions to the left elbow, left inner forearm, left outer forearm, a "watch band abrasion" which Dr. Mitchell opined would be consistent with the hand raised, injuries to the back of the right hand, right wrist and forearm abrasions, a laceration to the right index finger and abrasions to the right palm, right elbow, and right forearm. Dr. Mitchell stated many of the abrasions were consistent with "defensive injuries," which he defined as wounds to the forearms and backs of the hands "that would be consistent with someone trying to ward off an attack from either a blunt object, or to protect themselves from a sharp object."

¶ 9 Dr. Mitchell acknowledged a victim in a physical altercation may attempt to scratch or injure her attacker, but Smith suffered "defensive injuries" to her forearms and the backs of her hands. According to Dr. Mitchell, Smith's injuries were indicative of her attempt to shield her body from the objects used in her murder. Dr. Mitchell also testified there was no evidence Smith had been sexually assaulted. He administered the sexual assault kit, gathering samples of Smith's hair, fingernail scrapings, and blood, because it was a "standard kit for this type of incident." The fingernail scrapings were not DNA tested at the time of trial.

¶ 10 Jennifer Aper, an Illinois State Police forensic scientist, testified she conducted DNA analysis of blood samples from defendant and Smith and the bloodstains found on defendant's boots, left sock, and coat. Aper opined the DNA test results indicated the blood on defendant's boots, left sock, and coat matched Smith's DNA profile.

¶ 11 The jury convicted defendant of first degree murder and the trial court sentenced him to natural life in prison. On direct appeal, defendant argued (1) his due process rights were violated when the State failed to correct a false impression that no witness could identify defendant; (2) he was denied his right to effective assistance of counsel; (3) the court abused its discretion by allowing certain rebuttal testimony; (4) his shackling without a hearing constituted plain error; (5) the court erred when it allowed photographs from the crime scene and autopsy into the jury room during deliberations; (6) the State failed to prove him guilty beyond a reasonable doubt; and (7) the State failed to prove the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or the court abused its discretion by imposing a natural life sentence. This court affirmed the lower court's judgment. *People v. Horton*, 371 Ill. App. 3d 1224 (2007) (table) (unpublished order under Supreme Court Rule 23).

¶ 12 B. Postconviction Petition

- 3 -

¶ 13        On November 2, 2007, defendant filed a *pro se* postconviction petition alleging ineffective assistance of trial counsel. On June 27, 2008, defendant, with the assistance of counsel, filed an amended postconviction petition adding additional ineffective assistance of trial counsel claims and due process violations. After conducting a hearing on the State's motion to dismiss, the trial court dismissed defendant's postconviction petition for failure to make a substantial showing of a constitutional violation. This court affirmed the trial court's judgment. *People v. Horton*, 396 Ill. App. 3d 1141 (2010) (table) (unpublished order under Supreme Court Rule 23).

¶ 14                        C. Section 2-1401 Petition

¶ 15        On August 19, 2010, defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/2-1401 (West 2008)). In November 2010, the State filed a motion to dismiss, and the trial court dismissed defendant's petition. Defendant appealed and OSAD moved to withdraw as appellate counsel, arguing the appeal presented no meritorious issues. This court agreed with OSAD and affirmed the trial court's dismissal of defendant's petition for relief from judgment. *People v. Horton*, 2012 IL App (4th) 110086-U.

¶ 16                        D. Motion for Forensic Testing

¶ 17        On April 2, 2012, defendant filed a petition for postconviction forensic testing pursuant to section 116-3 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/116-3 (West 2010)). Defendant requested DNA testing of multiple items of evidence, including Smith's fingernail scrapings, light tufts of hair found on Smith's body, a black plastic knife handle, a tooth piece found on Smith's body, cigarette butts, and hair found near Smith's legs. On May 16, 2013, the trial court entered an agreed order for forensic testing.

¶ 18                              E. First Successive Postconviction Petition

¶ 19        On July 15, 2016, defendant, through counsel, filed a motion for leave to file a first successive postconviction petition. Defendant alleged actual innocence based on new DNA evidence. He attached to his petition an official report of Cellmark Forensics, stating in relevant part, in a "partial Y-STR profile" defendant was excluded as a contributor of the male DNA obtained from Smith's left-hand fingernail scrapings. Defendant also filed a petition for relief from judgment under section 2-1401 of the Civil Procedure Code (735 ILCS 5/2-1401 (West 2014)), making substantially similar arguments and with the same attachments as in his successive postconviction petition.

¶ 20        On August 2, 2016, the trial court entered an order allowing defendant's motion for leave to file his first successive postconviction petition and advanced defendant's petition to the second stage of postconviction proceedings. On December 1, 2016, the State filed a motion to dismiss defendant's petition, alleging the evidence was not (1) material or (2) of such a conclusive character it would probably change the result on retrial. On June 29, 2017, the court entered an order granting the State's motion to dismiss. The court found defendant failed to establish how Smith's left-hand fingernail scrapings were material to his case, noting there was no evidence Smith had an opportunity to "scratch her attacker with her hands." In addition, the court also found defendant's "newly discovered evidence" was not of such conclusive character as would probably change the result on retrial. This court affirmed the trial court's judgment concluding, "Although differences in DNA analysis testing results may be critical in many instances, this is not one of them because the new DNA evidence defendant has presented does not show defendant's actual innocence in this case." *People v. Horton*, 2020 IL App (4th) 170643-U, ¶ 73.

¶ 21                            F. Motion for DNA Database Search

¶ 22            On October 4, 2021, defendant filed a "Request for Genetic Marker and/or DNA

Database Search on Evidence" pursuant to section 116-5 of the Criminal Procedure Code (725

ILCS 5/116-5 (West 2020)), asserting the partial Y-STR profile obtained from Smith's left-hand

nail scrapings and the two partial Y-STR profiles obtained from the knife handle should be put

through the database of the Illinois State Police. On October 7, 2021, the trial court entered a

written order denying defendant's motion, stating in part, "[t]his request comes after his actual

innocence claim based on DNA evidence was soundly rejected." Citing to this court's decision in

*People v. Horton*, 2020 IL App (4th) 170643-U, the trial court further noted:

> "There is 'overwhelming evidence establishing defendant's guilt,' including the
>
> facts that Smith's blood was found on [defendant's] 'boots, left sock, and coat,'
>
> the tread pattern from his 'boot was consistent with a pattern abrasion on Smith's
>
> skull,' and [defendant] attempted to 'rid himself of these clothes after leaving
>
> Smith's apartment.' [Citation.] While DNA analysis may be critical in many
>
> cases, 'this is not one of them.' ".

¶ 23            On October 23, 2021, defendant filed a motion to reconsider the trial court's

ruling. The court denied defendant's motion.

¶ 24            This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26            OSAD contends it considered whether the trial court erred in dismissing

defendant's motion for a DNA database search but concluded such a challenge would be without

arguable merit. Specifically, OSAD asserts the record does not demonstrate any of the partial

profiles previously identified on the evidence is suitable for comparison under current State and

federal databases. Additionally, OSAD argues this court has already rejected defendant's claim regarding the materiality of the DNA evidence and as such defendant is precluded from relitigating the issue. Defendant disagrees with OSAD's evaluation, suggesting the court erred when denying his motion because section 116-5 of the Criminal Procedure Code (725 ILCS 5/116-5 (West 2020)) "does not require [defendant] to set forth or show in his motion any material reason why new DNA database comparison could lead to any new evidence in his case." The State contends the trial court did not err in denying defendant's motion for a DNA database search because the statute upon which defendant relies applies to pretrial DNA database searches.

¶ 27          Section 116-5 of the Criminal Procedure Code governs pretrial DNA database searches. See *People v. Wright*, 2012 IL App (1st) 073106, ¶ 61, 971 N.E.2d 549, 461. "Upon motion by a defendant charged with any offense where DNA evidence may be material to the defense investigation or relevant at trial, a court may order a DNA database search by the Illinois State Police." 725 ILCS 5/116-5(a) (West 2020). We review a trial court's denial of a section 116-5 motion for an abuse of discretion. *Wright*, 2012 IL App (1st) 073106, ¶ 60.

¶ 28          In defendant's appeal from the denial of his successive postconviction petition, defendant asserted the trial court erred when it determined the new DNA evidence was not material. We disagreed, finding "the trial court did not err in finding the new DNA evidence was not material because there was no evidence Smith had an opportunity to scratch her attacker with her left-hand fingernails and there were no injuries to Smith's hands that would establish she scratched her attacker." *People v. Horton*, 2020 IL App (4th) 170643-U, ¶ 58. We additionally concluded the evidence establishing defendant's guilt was overwhelming. DNA test results showed the blood on defendant's boots, left sock, and coat matched Smith's DNA profile.

Defendant attempted to dispose of these clothes after leaving Smith's apartment. Further, the tread pattern on defendant's boot was consistent with a pattern abrasion on Smith's skull. We note "[t]he collateral estoppel doctrine bars relitigation of an issue already decided in a prior case." *People v. Tenner*, 206 Ill. 2d 381, 396, 794 N.E.2d 238, 247 (2002); see also *People v. Williams*, 392 Ill. App. 3d 359, 368, 910 N.E.2d 627, 635 (2009) ("The Illinois Supreme Court has applied collateral estoppel to bar the consideration of an issue in a successive postconviction proceeding if the identical issue was decided in a prior postconviction proceeding."). Because we have already considered and rejected defendant's contention regarding the materiality of the DNA evidence at issue, we find the trial court did not abuse its discretion in denying defendant's motion for a DNA database search.

¶ 29        We agree with OSAD and find any challenge to the denial of defendant's motion for a DNA database search would be without arguable merit.

¶ 30                            III. CONCLUSION

¶ 31        For the reasons stated, we grant OSAD's motion to withdraw as counsel and affirm the trial court's judgment.

¶ 32        Affirmed.